OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Sean M. Maga, filed December 29, 2006. On May 20, 2006, at approximately 7:19 p.m., Maga was cited for following another vehicle too closely, in violation of R.C. 4511.34, a minor misdemeanor. On that date, Officer Kevin Sink of the Butler Township Police Department was on duty, in uniform, in a stationary, marked cruiser located at the back of Cricket Hollow Camp in Butler *Page 2 
Township, Montgomery County, Ohio. Officer Sink observed Maga's vehicle behind another vehicle at a distance of approximately 10 to 12 feet. Both vehicles appeared to be traveling at about 40 to 45 miles per hour in a 45 miles per hour zone. Sink initiated a traffic stop, and he issued Maga a traffic ticket, citing a violation of R.C. 4511.34.
 {¶ 2} The Complaint section of the traffic ticket Maga received indicated that at the time of the offense the pavement was dry, visibility was clear, there was no adverse weather, traffic was light, the area was rural/residential, a crash did not occur, and that Maga accelerated rapidly. The Officer's Statement of Facts provided, "While sitting at the Gatehouse of Cricket Holler Camp, I observed the Defendant accelerate rapidly from the light at Philadelphia and Frederick heading East. When it passed my location, it was tail-gating the car in front of it and continued in this manner. When I stopped the vehicle for the violation, the Defendant complained that `the driver ahead of him was traveling way under the speed limit.'"
 {¶ 3} The Complaint section of the traffic ticket also provided that the offense occurred on May 20, 2006, but the Summons section of the traffic ticket erroneously indicateded that the Summons was served on Maga on May 22, 2006. At trial, Maga learned that Officer Sink altered the date on the court's copy of the Summons section, so that the Summons section provided that the Summons was served on Maga on May 20, 2006, the same date the offense occurred.
 {¶ 4} Pursuant to the Summons, Maga appeared at Vandalia Municipal Court on May 30, 2006, for an arraignment. At that time, the bailiff informed Maga that he was charged with Following too Close, a minor misdemeanor, and the Magistrate asked Maga how he wished to plead. Maga responded by asking the Magistrate if the prosecutor was present. The Magistrate *Page 3 
indicated that the prosecutor was in the building. Due to the absence of the prosecutor in the courtroom, Maga orally moved for dismissal for lack of prosecution. The Magistrate then entered a plea of not guilty on Maga's behalf. Maga then responded, "I object and withdraw that plea." The transcript of the arraignment ends with the Magistrate instructing Maga to take a seat and stating, "We'll have the prosecutor talk to you."
 {¶ 5} On June 6, 2006, Maga filed a "Notice of Fiduciary Duty," a "Notice of Misprison of Felony," a "Motion to Dismiss," and a "Notice of Alibi Defense." In his "Notice of Alibi Defense," Maga asserted that he was at his home on May 20, 2006, between the hours of 5:00 p.m. and 9:00 p.m., "[i]n that the colorable charging instrument states that it was served May 22, 2006, two days after the alleged occurrence." Although Maga argues that the docket herein "clearly lacks an entry" denying his Motion to Dismiss, in fact on June 14, 2006, the municipal court issued an Order and Entry providing that it had reviewed the file and charges and found the "Motions" to be unfounded.
 {¶ 6} A trial was held before the Magistrate on June 15, 2006. Officer Sink testified regarding the traffic stop. Although Maga's "Notice of Alibi Defense" provided that Maga was at home on May 20, 2006, Lisa Marie Maga, Maga's mother, along with Kevin Charles Czekalski, testified that they were with Maga on May 22, 2006, at Maga's home. The Magistrate issued a Decision on June 20, 2006, finding Maga guilty and imposing a $40.00 fine plus court costs. The Magistrate determined, since the date of the offense was May 20, 2006, Maga's whereabouts on May 22, 2006, were irrelevant to his guilt or innocence.
 {¶ 7} On July 5, 2006, Maga filed "Objections to Referee's Report and Recommendation," and on December 5, 2006, the municipal court adoped the Magistrate's *Page 4 
Decision.
 {¶ 8} Maga asserts three assignments of error. Maga's first assignment of error is as follows:
 {¶ 9} "THE COURT DID ERR BY NOT DISMISSING THE CASE WHEN THE PLAINTIFF (APPELLEE) AND COUNSEL FOR THE PLAINTIFF FAILED TO APPEAR AT ARRANGEMENT (sic) AND THE DEFENDANT (APPELLANT) OBJECTED AND MOVED THE COURT TO DISMISS FOR LACK OF PROSECUTION."
 {¶ 10} "Litigants who choose to proceed pro se are presumed to know the law and correct procedure, and are held to the same standard as other litigants." Yocum v. Means, Darke App. No. 1576, 2002-Ohio-3803. A litigant proceeding pro se "cannot expect or demand special treatment from the judge, who is to sit as an impartial arbiter." Id. (Internal citations omitted).
 {¶ 11} In support of this assignment of error, Maga relies upon R.C.309.08, which provides, "* * * The prosecuting attorney shall prosecute, on behalf of the state, all complaints, suits, and controversies in which the state is a party, * * * ."
 {¶ 12} The Ohio Traffic Rules, as set forth in the Ohio Revised Code, "prescribe the procedure to be followed * * * in traffic cases." Traf.R.1(A).
 {¶ 13} An "[a]rraignment shall be conducted in open court and shall consist of reading the complaint to the defendant, or stating to him the substance of the charge, and calling on him to plead thereto." Traf.R. 8(B). "* * * If a defendant refuses to plead, the court shall enter a plea of not guilty on behalf of the defendant." Traf.R. 10(A). There is no requirement in the "Ohio Traffic Rules" that the prosecuting attorney be present in the courtroom during arraignment. Further, the trial transcript makes *Page 5 
clear that the State prosecuted Maga in a timely manner following the arraignment. There being no merit to Maga's first assignment of error, it is overruled.
 {¶ 14} Maga's second assignment of error is as follows:
 {¶ 15} "THE COURT DID ERR BY ALLOWING THE DATE TO BE CHANGED ON COURT'S COPY OF THE SUMMONS PORTION OF THE TICKET AND THEN NOT SERVICING SAID TICKET ON THE DEFENDANT. AND, IN EFFECT, ALLOW THE OFFICER TO COMMIT PERJURY BY CHANGING THE DATE."
 {¶ 16} Pursuant to the Ohio Traffic Rules, "Traffic ticket' means the traffic complaint and summons described in Traffic R. 3." Traf.R. 2(B).
 {¶ 17} "The function of a complaint is to inform the accused of the crime of which he is charged." State v. Barnes, Hamilton App. No. C-050174, 2006-Ohio-1748. "The purpose of a summons is to bring a party into court." Northland Village Apts. v. Hamp (June 20, 1991), Montgomery App. No. 12407.
 {¶ 18} Traf.R. 3(E) provides, "A law enforcement officer who issues a ticket shall complete and sign the ticket, serve a copy of the completed copy on the defendant, and, without unnecessary delay, file the court copy with the court. If the issuing officer personally serves a copy of the completed ticket on the defendant, the issuing officer shall note the date of personal service on the ticket in the space provided."
 {¶ 19} "The state may amend a traffic ticket that omits necessary information or includes a clerical error as long as (1) the original traffic ticket has given the defendant notice of the true nature of the offense; (2) the defendant has not been deprived of a reasonable opportunity to prepare a defense; and (3) the amendment merely clarifies or amplifies the information in the original ticket. And a complaint prepared under *Page 6 
Traf.R. 3 simply needs to advise the defendant of the offense with which he is charged in a manner that can be readily understood by a person making a reasonable attempt to understand." State v. Wiest, Hamilton App. No. C-030674, 2004-Ohio-2577.
 {¶ 20} In Wiest, the defendant struck a vehicle in front of him and received a traffic ticket for an assured-clear-distance-ahead violation. The citation indicated a violation of R.C. 506-8, but there is no such section in the Revised Code. Id. There is, however, a Cincinnati Municipal Code 506-8, and the officer later altered the citation by checking the "CMC" box before filing the citation with the trial court. Id. In affirming the defendant's conviction, the court determined that the traffic ticket could be readily understood by a person making a reasonable attempt to understand it, since it adequately advised the defendant of the charge against him, and any error in failing to serve an amended copy of the traffic ticket upon the defendant as soon as possible was harmless. Id.
 {¶ 21} The Revised Code defines perjury as follows: "No person, in any official proceeding, shall knowingly make a false statement under oath or affirmation, or knowingly swear or affirm the truth of a false statement previously made, when either statement is material." R.C.2921.11(A).
 {¶ 22} "A falsification is material, regardless of its admissibility in evidence, if it can affect the course or outcome of the proceeding. * * * ." R.C. 2921.11(B).
 {¶ 23} At trial, the following exchange occurred regarding the altered traffic ticket:
 {¶ 24} "MAGISTRATE: Okay. I do have one question. As you know Mr. Maga's filed a Notice of Alibi and has called witnesses indicating he was with them on May 22. *Page 7 
And, Officer, you're still under oath. I note here that it looks like the date was written over on the ticket. Can, on the original ticket, and it looks like it may have originally said May 22. Can you explain that?
 {¶ 25} * * *
 {¶ 26} [Maga then approached the bench and showed the Magistrate Maga's unaltered traffic ticket indicating he was served on May 22, 2006.]
 {¶ 27} "OFF. SINK: Yeah, yeah, I changed it, yeah.
 {¶ 28} "MAGISTRATE: Okay.
 {¶ 29} "OFF. SINK: The only reason I wrote 22 down here and it's supposed to be 20.
 {¶ 30} * *
 {¶ 31} "OFF. SINK: So I wrote right over it, yes.
 {¶ 32} "MAGISTRATE: And I see that up at the top you wrote May 20 . . .
 {¶ 33} "OFF. SINK: Correct.
 {¶ 34} * *
 {¶ 35} "MAGISTRATE: Okay. Now, Officer, what, did you change that after you had given to the copy to Mr. Maga because his says the 22nd.
 {¶ 36} "OFF. SINK: I must, I must have the only thing I can assume.
 {¶ 37} * *
 {¶ 38} "MAGISTRATE: * * * Based on the evidence before me the Court is convinced beyond a reasonable doubt of the truth of the charge. And, Mr. Maga, the date given on the Complaint itself which shows the location and the pertinent time and date is May 20 at the top of the ticket and the bottom date refers to the time you were *Page 8 
served and with the explanation of the officer as to what happened with that the Court is convinced of the truth of the charge and will make a finding of guilty in this matter."
 {¶ 39} The Complaint that Officer Sink served upon Maga gave Maga notice of the true nature of the offense with which he was charged, namely following too closely, in violation of R.C. 4511.34. The Complaint also properly notified Maga of the date of the offense, as the Magistrate noted. Since Maga received the traffic ticket on May 20, 2006, and the matter was not tried until June 15, following an arraignment, Maga was not deprived of a reasonable opportunity to prepare to defend against the charge of following too closely. The Summons portion of the traffic ticket merely contained a clerical error, and Officer Sink explained the mistake and his correction thereof to the Magistrate's satisfaction. That Maga appeared in court at the time designated in the Summons for arraignment establishes that the Summons was not defective. In other words, Officer Sink's alteration merely corrected a human error regarding the service/summons date, not the violation date. Thus, no prejudice is shown.
 {¶ 40} Maga also argues, "It's well-settled law that Informations, Indictments, Complaints and charging instruments signed by public prosecutors may be freely amended (Crim.R. 7(D)) but no law or rule allows the alteration or amendment of affidavits and sworn written statements of witnesses. The prosecution's only witness not only impeached his own testimony, he committed plain perjury either in open court or within his prior sworn written statement."
 {¶ 41} The Summons provides, "The issuing-charging law enforcement officer states under the penalties of perjury and falsification that he-she has read the above complaint and that it is true." In signing the Summons, Officer Sink attested under *Page 9 
oath to the truth of the information in the Complaint, and not the Summons. Even if Officer Sink attested under oath to the erroneous statement in the Summons regarding the date of service, the course or outcome of the proceeding would not be affected; the date Officer Sink served the summons upon Maga is immaterial, and Officer Sink did not commit perjury.
 {¶ 42} We finally note that, in "Appellant's Response to Appellee's Brief," Maga argues for the first time that the Magistrate failed to comply with Traf. R. 8(D). Traf.R. 8(D) requires the Magistrate, at arraignment, to explain certain rights to defendants prior to calling for a plea. Traf. R. 8(E) provides, "If there are multiple defendants to be arraigned, the judge may advise, or cause them to be advised, of their rights by general announcement." This argument lacks merit as appellant's citation was tried on its merits. Thus, any error is harmless.
 {¶ 43} There being no abuse of discretion, Maga's second assignment of error is overruled.
 {¶ 44} Maga's third assignment of error is as follows:
 {¶ 45} "THE TRIAL COURT DID ERR BY FINDING THE DEFENDANT GUILTY OF FOLLOWING TO (sic) CLOSE WHEN THE OFFICER COULD NOT ARTICULATE AS TO WHAT IS ASSURED CLEAR DISTANCE."
 {¶ 46} Maga was charged with a violation of R.C. 4511.34, which provides, "The operator of a motor vehicle, streetcar, or trackless trolley shall not follow another vehicle * * * more closely than is reasonable and prudent, having due regard for the speed of such vehicle * * * and the traffic upon and the condition of the highway." Maga argues that R.C. 4511.34 is void for vagueness. He further argues, "for this *Page 10 
particular code provision to have any legal footing O.R.C. 4511.34 would require an accident or at least a near accident."
 {¶ 47} At trial, Officer Sink testified that Maga was "anywhere from ten to twelve feet" behind the vehicle ahead of him at a speed of "40 to 45 mph which is well within the limits of that, that stretch of road."
 {¶ 48} "The `void for vagueness' doctrine is premised on the due process provision of the Fourteenth Amendment, and bars enforcement of, `a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' United States v. Laner
(1997), 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432.
 {¶ 49} "`It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing a fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.'Grayned v. Rockford (1972), 408 U.S. 104, 108-109, 92 S.Ct. 2294,33 L.Ed.2d 222." State v. Quinones, Mahoning App. No. 02 CA 243,2003-Ohio-6727 (holding R.C. 4511.34 is not void for vagueness). *Page 11 
 {¶ 50} "The Constitution requires only that the challenged statute or ordinance `* * * conveys [a] sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'United States v. Petrillo (1947), 332 U.S. 1, 8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877.
 {¶ 51} "`Absolute or mathematical certainty is not required in the framing of a statute. Reasonable certainty of the nature and cause of the offense is all that is required. Some offenses admit of much greater precision and definiteness than others, but it is quite obvious that in the case at bar the statute must be sufficiently elastic and adaptable to meet all the dangerous situations presented, in order to adequately safeguard the travelling [sic] public. * * *' State v. Schaeffer (1917),96 Ohio St. 215, 236, 117 N.E. 220,226.
 {¶ 52} "`* * * the statue is merely a traffic regulation which has for its standard the rule of reason. Traffic circumstances vary greatly. A more specific regulation would not adequately safeguard the public' [quoting State v. Hinson (Feb. 5, 1982), 4th Dist. No. 385].' Id. at 60-61, 117 N.E. 220, 43 Ohio App.3d 59, 539, N.E.2d 641."Quinones (quoting State v. Gonzalez (1987), 43 Ohio App.3d 59,539 N.E.2d 641.
 {¶ 53} The Quinones court further relied upon our decision inState v. Rankin (Jan. 19, 1994), Greene App. No. 93-CA-30, as follows: "Ten feet is less than the length of the average car. To be following a car that closely when both cars are traveling at 37 miles per hour is inherently unsafe, and under those circumstances a police officer has a reasonable and articulable suspicion that the driver of the following car is following too closely.' Id. at 2, 539 N.E.2d 641."Quinones.
 {¶ 54} Finally, in determining that R.C. 4511.34 meets constitutional *Page 12 
requirements, the Quinones court noted, "All legislative enactments enjoy a strong presumption of constitutionality. (Internal citation omitted). `[T]he party asserting that a statute is unconstitutional must prove this assertion beyond a reasonable doubt in order to prevail.' (Internal citation omitted). When considering a party's assertion that a statute is void for vagueness, any doubts will be resolved in favor of upholding the constitutionally valid." (Internal citation omitted).
 {¶ 55} Applying the above principles, and presuming the constitutional validity of R.C. 4511.34, we conclude that the "reasonable and prudent" standard, while not precise, clearly sets forth a reasonable standard for drivers and authorities to apply when estimating the distance between two moving vehicles. That an officer cannot precisely measure the distance between the vehicles he observes does not render his enforcement of R.C. 4511.34 arbitrary and discriminatory. Traffic conditions vary considerably, and at issue is whether a driver is able to stop his vehicle in time to avoid striking the vehicle ahead of him. A reasonable driver understands that following the vehicle ahead of him too closely renders an accident nearly inevitable if the lead vehicle suddenly comes to a stop. Maga's argument that an accident or near accident is required defies logic. There being no merit to Maga's third assignment of error, it is overruled.
Judgment affirmed.
 BROGAN, J. and FAIN, J., concur. *Page 1