[Cite as *State v. Myers*, 2021-Ohio-4087.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 21CA060027 |
| | : | |
| BRIAN MYERS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Delaware County
                            Municipal Court, Case Nos.
                            19CRB02674 & 19TRC15


JUDGMENT:                   AFFIRMED


DATE OF JUDGMENT ENTRY:     November 17, 2021


APPEARANCES:


For Defendant-Appellant:              For Plaintiff-Appellee:

DOMINIC L. MANGO                      AMELIA BEAN DEFLUMER
MANGO LAW OFFICE                      DELAWARE CITY PROSECUTOR
43 South Franklin St.                 ASHLEY THOMAS
Delaware, OH 43015                    70 North Union St.
                                      Delaware, OH 43015
GEOFFREY A. SPALL
43 South Franklin Street
Delaware, OH 43015

*Delaney, J.*

{¶1} Appellant Brian Myers appeals from the May 19, 2021 Judgment Entry of the Delaware County Municipal Court, incorporating the Court's February 5, 2021 Judgment Entry Denying Defendant's Motion to Suppress. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} This case arose on December 6, 2019, when employees of the Home Depot in Lewis Center contacted the Delaware County Sheriff's Office to advise that an employee appeared to be under the influence at work, was asked to leave, and was attempting to leave the premises in his vehicle.

{¶3} John Doe[1] is an employee of Home Depot. On December 6, 2019, he called the Delaware County Sheriff's Department to report that an employee—appellant—was "two times over the legal limit" and attempting the leave the store lot in a silver Ford Ranger. Doe remained on the call as deputies were en route. Doe reported in the call that he was following appellant to the parking lot to attempt to prevent him from leaving. Doe further reported that appellant was wearing a black jacket over a flannel shirt and had just been at the hospital where "he blew a .17." Doe reported that appellant had military experience and was likely to be combative. Doe continued to describe appellant's movements in the parking lot once he entered his vehicle.

{¶4} Deputy Andrew Lee was dispatched to Home Depot. John Doe flagged him down in the parking lot, spoke to him briefly, and pointed out appellant's truck. Appellant was driving toward an adjacent Steak and Shake restaurant.

---

[1] John Doe's name is in the case record and John Doe identified himself to the Delaware County Sheriff's Department.

{¶5} Lee has been a deputy for approximately 10 years and is trained in recognition and apprehension of impaired drivers; his initial training has been continuously updated throughout his career. Lee is trained in the detection and apprehension of drivers impaired by drugs of abuse; he has completed ARIDE and is a certified Drug Recognition Expert (DRE). Lee is an instructor in the DRE program and is certified to administer standardized field-sobriety tests (SFSTs).

{¶6} Lee was made aware of several things by the Home Depot staff. Smelling alcohol on appellant's breath, Home Depot staff believed appellant was impaired by alcohol and administered a PBT (portable breath test) in the store. The PBT showed that he was "almost twice the legal limit." Store staff tried to arrange a ride for appellant because they didn't want him to drive, but he insisted on leaving and stated he was going to drive home. T. 13-14.

{¶7} Lee caught up to appellant's vehicle and made a traffic stop. Lee testified he stopped appellant entirely because of the information reported by John Doe; John Doe pointed out the vehicle being driven by appellant. Lee was determined to stop appellant before he reached the public roadway. Lee did not observe any traffic violations by appellant in the short period of time Lee watched him driving. Appellant pulled over in the Steak and Shake lot without incident.

{¶8} Lee testified that an OVI investigation began immediately upon his initial contact with appellant because of the information he had received from Home Depot. T. 18. Upon cross-examination, Lee testified as follows about his decision to traffic-stop appellant:

* * * *.

[DEFENSE TRIAL COUNSEL]: * * * *. Based on what you knew when you effectuated the stop, you weren't aware of, like, specific behavior or interactions, you were just simply told that there was an intoxicated person leaving the parking lot, correct?

[DEPUTY LEE]: Well, it was more than just an intoxicated person leaving the parking lot. He had been sent home from work because his managers were concerned about his behaviors. He was unable to function properly at work to the point where they were concerned, and that they didn't want him to go home by himself.

[DEFENSE TRIAL COUNSEL]: At the time you pulled up, your prior testimony was you spoke very briefly with the employer who said: That's the guy I called you about, there he goes. And you said: Okay, I'm going to go stop him, or something to that effect?

[DEPUTY LEE]: Right. But I also testified that he relayed information to our dispatchers, who relayed that to me.

* * * *.

T. 21-22.

{¶9} As Lee approached the vehicle on the passenger side, appellant stepped out, unprompted. Lee came around to the driver's-side of the vehicle and asked how appellant was doing. Appellant responded that he was "pissed off" because he had a migraine the night before; he was told by the VA to increase his medicine and he had therefore doubled it. Appellant said he felt "wonky" and the medicine made him drowsy. Appellant showed Lee paperwork about his medication and stated that he also takes

medication for depression. Appellant said he was sent home from work because he was not stable on his feet; he felt dizzy and wanted to go home to lay down.

{¶10} Lee did not observe an odor of an alcoholic beverage about appellant's person immediately upon contact. He did, however, note that appellant's speech was slurred and appellant had a dry mouth. Appellant's pants were unzipped and he steadied himself with one hand on the vehicle's door and one on its frame.

{¶11} As Lee spoke to appellant, he noticed the odor of an alcoholic beverage emanating directly from appellant's mouth. Appellant claimed the odor was due to an alcohol-based lotion. Based upon Lee's ARIDE and DRE training, he suspected appellant was also impaired due to ingestion of a drug.

{¶12} Lee returned to his cruiser to run appellant's information; while doing so, he spoke to another deputy who told him appellant tested above the legal limit for alcohol when tested by Home Depot. Lee told the deputy he suspected appellant was under the influence of a prescription medication. Lee learned appellant's operator's license was suspended for a prior O.V.I. and he was operating on driving privileges.

{¶13} Based upon all of these observations, Lee decided to administer SFSTs. Upon requesting SFSTs, Lee observed appellant attempting to put mints in his mouth and advised him not to do so. Appellant complied.

{¶14} Appellant was subsequently arrested and charged with two counts of OVI pursuant to R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(d), both misdemeanors of the first degree; one count of driving under OVI suspension pursuant to R.C. 4510.14, a misdemeanor of the first degree; and one count of open container pursuant to R.C. 4301.62, a minor misdemeanor.

{¶15} Appellant entered pleas of not guilty and filed a motion to suppress. An evidentiary hearing was held on November 2, 2020, and the trial court overruled the motion by judgment entry dated February 5, 2021.

{¶16} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶17} "THE TRIAL COURT ERRED WHEN IT OVERRULED THE MOTION OF APPELLANT TO SUPPRESS EVIDENCE WHEREIN IT FOUND THE STOP OF THE DEFENDANT'S VEHICLE LAWFUL."

**ANALYSIS**

{¶18} In his sole assignment of error, appellant argues the trial court erred in overruling the motion to suppress because Lee had no reasonable suspicion to stop his vehicle. We disagree.

{¶19} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State*

*v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶20} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See, *Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶21} Appellant argues the trial court incorrectly decided the ultimate issue raised in his motion to suppress: whether Deputy Lee had reasonable suspicion to stop his vehicle without personally observing any evidence of impaired driving. Appellee responds that reasonable suspicion is supported by the information provided by John Doe, an identified citizen informant.

{¶22} A police officer may perform an investigatory stop under certain circumstances. The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an

exception applies. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Because the "balance between the public interest and the individual's right to personal security" tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

{¶23} In *Terry,* the Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. See, *State v. Chatton,* 11 Ohio St.3d 59, 61, 463 N.E.2d 1237 (1984). The Ohio Supreme Court has emphasized that probable cause is not required to make a traffic stop; rather the standard is reasonable and articulable suspicion. *State v. Mays,* 119 Ohio St .3d 406, 2008–Ohio–4358, 894 N.E.2d 1204, ¶ 23.

{¶24} The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews,* 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271 (1991); *State v. Bobo,* 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988). The Supreme Court of the United States has re-emphasized the importance of reviewing the totality of the circumstances in making a reasonable-suspicion determination:

When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.

*United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), citing *United States v. Cortez,* 449 U.S. 411, 417–418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

{¶25} Traffic stops based upon an officer's observation of a traffic violation are constitutionally permissible. *Dayton v. Erickson,* 76 Ohio St.3d 3, 11–12, 1996-Ohio-431, 665 N.E.2d 1091. Traffic stops may also be permissible when another person supplies information to an officer who has not personally observed a violation. The United States Supreme Court has "firmly rejected the argument 'that reasonable cause for a[n investigative stop] can only be based on the officer's personal observation, rather than on information supplied by another person.' " (Brackets sic.) *State v. Tidwell*, --Ohio St.3d--,

2021-Ohio-2072, --N.E.3d--, ¶ 24, citing *Navarette v. California*, 572 U.S. 393, 397, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014), internal citation omitted.

{¶26} The issue is the sufficiency of the information provided by the other person. In order to determine if the deputy had a reasonable suspicion to stop appellant, we must determine whether the information conveyed to the deputy was sufficient to provide a reasonable and articulable suspicion. *State v. Bagnoli*, 5th Dist. Stark No. 2014CA00215, 2015-Ohio-3314, ¶ 15.

{¶27} The courts have recognized three categories of informants: (1) citizen informants; (2) known informants, i.e., those from the criminal world who have previously provided reliable tips; and (3) anonymous informants, who are comparatively unreliable. *Maumee v. Weisner,* 87 Ohio St.3d 295, 300, 1999-Ohio-68, 720 N.E.2d 507. In *Weisner,* the Ohio Supreme Court discussed the credibility to be given to an identified citizen tipster:

> The [United States Supreme Court] has further suggested that an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: '[I]f an unquestionably honest citizen comes forward with a report of criminal activity-which if fabricated would subject him to criminal liability-we have found rigorous scrutiny of the basis of his knowledge unnecessary.' *Illinois v. Gates,* 462 U.S. at 233–234, 103 S.Ct. at 2329–2330, 76 L.Ed.2d at 545.
>
> *Maumee v. Weisner,* 87 Ohio St.3d 295, 300, 1999-Ohio-68, 720 N.E.2d 507.

{¶28} The categorization of the informant as an identified citizen informant does not determine the outcome of the case and is only one element of the totality-of-the-circumstances review of the tip itself, weighing in favor of the informant's reliability and veracity. *Maumee*, supra at 302. The informant's motivation may also support the reliability of the tip. *Id.*

{¶29} In the instant case, dispatch advised Lee that Home Depot staff was concerned about appellant's behavior and demeanor, tested him for alcohol impairment, found him to be "over the limit," and attempted to prevent him from driving out of the lot. The Home Depot caller, "John Doe," remained on the phone as Lee arrived, flagged Lee down in the parking lot, and pointed to appellant's vehicle as it drove away. Despite no report of, or evidence of, erratic driving, Lee had an unusual amount of other highly relevant information to provide reasonable suspicion that appellant was operating a motor vehicle while under the influence of alcohol. John Doe was clearly motivated by concerns of safety and liability; Home Depot was concerned enough about appellant's apparent impairment to test him with a PBT and then to try to arrange a ride home. Instead, appellant insisted on leaving in his own vehicle, prompting the call to the Sheriff's Office. These factors weigh heavily in favor of John Doe's reliability and veracity because these factors arose in the context of a workplace-safety issue.

{¶30} The Home Depot informant demonstrated other indicia of reliability as well. John Doe initiated face-to-face contact with Lee by flagging him down in the parking lot. See, *Tidwell*, supra at ¶ 42 [informant's willingness to initiated face-to-face contact has investigative value]. John Doe's tip "was not about a past crime but rather was about alleged criminal activity that was then afoot." *Tidwell,* supra at ¶ 44. "The informant surely

recognized that the immediate reaction he expected from [the officer] would either prove him right or prove him wrong." *Id.* "The informant's suggested knowledge of [appellant's] present condition and anticipated response from the officer thus gave the tip some further indicia of reliability." *Id.*

{¶31} Finally, a very brief time period elapsed between Lee's encounter with Doe and his traffic stop of appellant; as Lee testified, it would have been unreasonable for him to wait for appellant to enter the public roadway. Again, as the Ohio Supreme Court discussed in *Tidwell:*

> It is undisputed that [the officer] stopped the vehicle because he believed there was a public-safety concern. Given the information then available to [the officer], it was reasonable under the totality of the circumstances for him to approach the vehicle in this public area and briefly detain its driver in order to make a most basic inquiry as to whether an immediate danger to public safety existed.

> *State v. Tidwell*, --Ohio St.3d--, 2021-Ohio-2072, --N.E.3d--, ¶ 47.

{¶32} Moreover, Lee's own contact with appellant allowed him to immediately confirm that appellant was impaired "based on what he personally smelled, saw, and heard." *Id.,* at ¶ 50. Appellant admitted he was drowsy, not himself, had doubled his medication, appeared disheveled, and had an odor of an alcoholic beverage on his breath.

{¶33} Under the totality of the circumstances, Lee had reasonable and articulable suspicion to stop appellant's vehicle. The trial court did not err in overruling appellant's motion to suppress, and appellant's sole assignment of error is therefore not well-taken.

## CONCLUSION

{¶34} Appellant's sole assignment of error is overruled and the judgment of the Delaware County Municipal Court is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Wise, John, J., concur.