[Cite as *State v. Johnson*, 2022-Ohio-3051.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 21CA62 |
| | : | |
| ALAYAS JOHNSON | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Richland County Court of Common Pleas, Case No. 2020CR733R

JUDGMENT: AFFIRMED

DATE OF JUDGMENT ENTRY: August 31, 2022

APPEARANCES:

For Plaintiff-Appellee:

GARY BISHOP
RICHLAND CO. PROSECUTOR
VICTORIA MUNSON
38 South Park St., 2nd Floor
Mansfield, OH 44902

For Defendant-Appellant:

DARIN AVERY
105 Sturges Ave.
Mansfield, OH 44903

*Delaney, J.*

{¶1} Appellant Alayas Johnson appeals from the August 4, 2021 Sentencing Entry of the Richland County Court of Common Pleas, incorporating the trial court's May 6, 2021 decision overruling his motion to suppress.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} This case arose on October 30, 2020, around 4:24 p.m., when Trooper Dickerson of the Ohio State Highway Patrol (OSHP) was monitoring northbound traffic on Interstate 71 at Mile Post 174. Dickerson is a criminal interdiction officer and has a K-9 with him for the purpose of "removing the criminal aspect from the roadways," which includes enforcing traffic laws. T. 12. Dickerson received additional training in K-9 handling and detection of narcotics and illegal substances. Dickerson and his K-9, Danny, are certified as a team to work together as partners.

{¶3} Dickerson testified to his understanding of R.C. 4511.34, the  traffic statute which prohibits following too closely. Dickerson testified enforcement depends upon road conditions and traffic density; his general "rule of thumb" is one car for every 10 miles per hour. In other words, if the speed limit is 70 mph, a driver should be at least six or seven car lengths in following distance from other vehicles to safely avoid any sudden hazard in the roadway. Dickerson has experience in enforcing the statute and has cited drivers for violations in the past.

{¶4} Dickerson was in a marked OSHP vehicle sitting in the median of the highway. He observed a white 4-door Chevy with Florida license plates in the middle lane, traveling at 70 mph. The vehicle slowed as it passed the trooper, which is not unusual, he testified.  Dickerson further testified the driver's seat was leaned far back, his

"shoulder was up behind the B-pillar, which is where the seat belt comes out, appearing to try to hide from me." T. 28. Dickerson testified this behavior by the driver was "not normal" and therefore caught his attention. T. 28. Dickerson checked the vehicle's speed with a calibrated laser device.

{¶5} Dickerson's dash cam video of the ensuing traffic stop was entered into evidence at the suppression hearing as appellee's Exhibit A. Dickerson manually turned on the camera after the driver changed lanes. The video show the driver pull into the lane behind a pickup truck pulling a trailer; the driver was approximately two car lengths behind the trailer. Dickerson pulled out of the median and followed the Chevy. He believed the Chevy was attempting to evade him because of a lane change when there was no reason to do so. The driver then moved back to the middle lane and was two car lengths behind the vehicle in front of him. At 70 mph, a safe distance would have been seven car lengths, in Dickerson's estimation.

{¶6} At this point, Dickerson initiated a traffic stop. He testified this decision was based upon the following-too-close violation and also the unsafe lane change; the driver changed lanes in front of an SUV in a manner which caused the SUV to slow its speed and follow too close.

{¶7} The vehicle pulled over and Dickerson approached the passenger side. He identified appellant as the driver and sole occupant. Appellant advised Dickerson immediately that he did not have an ID or operator's license. The Chevy was a rental car, but appellant advised his brother rented the vehicle and appellant was not in possession of the rental agreement. Dickerson asked appellant about his travel plans and appellant said he had just been released from prison and was traveling from Oklahoma to New York

to see his mother. Dickerson told appellant why he was stopped and appellant acknowledged he was nervous when he saw the trooper. Dickerson observed a lot of trash inside the vehicle, and appellant said he had been driving alone for two days. Dickerson concluded appellant was attempting to get somewhere fast, driving continuously and not stopping overnight, based upon the amount of debris in the vehicle.

{¶8} Dickerson asked appellant to exit the vehicle and he did so without incident. Appellant asked if he could smoke a cigarette, which Dickerson perceived as evidence he was nervous or afraid he would not be able to smoke if he was arrested. Dickerson patted appellant down for weapons and found none. He secured appellant in the front seat of his patrol car. Appellant repeatedly pleaded for Dickerson not to tow the vehicle, but also conceded he is not on the rental agreement. When asked why his operator's license was suspended, appellant responded that he had unpaid traffic citations in Oklahoma.

{¶9} Based on his interaction with appellant, Dickerson suspected criminal activity and deployed his K-9, Danny, to sniff the vehicle. Danny did not alert on the vehicle. Dickerson told appellant he could not permit him to drive away in the vehicle because he had no operator's license and Dickerson had not yet been able to confirm his identity. Dickerson eventually confirmed appellant did not have a valid operator's license. Via Oklahoma dispatch, he submitted appellant's name and date of birth, requesting a criminal history. During conversation appellant then provided a Nevada ID number. Around 4:35 p.m., dispatch identified an individual corresponding to the ID number provided by appellant.

{¶10} In the meantime, Dickerson's supervisor arrived on scene and sat with appellant in the cruiser as Dickerson ran Danny along the outside of the rental car. Dickerson first asked appellant if there was anything in the vehicle and appellant said no. Appellant's hesitation in answering also added to the trooper's suspicion. Danny did not alert on the rental car, and was again secured in the trooper's cruiser.

{¶11} Dickerson returned to appellant and Mirandized him.  He then asked if there was anything illegal in the car, and appellant stated he had half a pound of marijuana in the trunk. Dickerson advised his supervisor, who noted he had observed loose pills in the vehicle.

{¶12} After a brief search at the scene, troopers located the following items in the vehicle: small packaged zipper bags of ecstasy and LSD, a loaded pistol between the center console and driver's seat, and a Mason jar of marijuana in the trunk. The vehicle was later driven to an OSHP post by a trooper where it was inventoried and towed. Dickerson testified that any time contraband is found on a traffic stop during criminal interdiction, the vehicle is more thoroughly searched at the post so the search is not conducted on the roadside.

{¶13} Upon cross-examination, Dickerson testified that prior to his observation of appellant on 71, his supervisor told him to watch out for a northbound rental car. Dickerson acknowledged that the circumstances of appellant's position in a rental car aroused his suspicion, but also testified that he observed appellant commit an unsafe lane change and follow another vehicle too closely.  Dickerson acknowledged there were other vehicles on the video which were too following too closely in his estimation, but his

focus was on appellant's vehicle. In the trooper's opinion, appellant was closer to the vehicle in front of him than was reasonable and prudent for traffic conditions.

{¶14} Appellant was charged by indictment upon the following counts: trafficking in marijuana pursuant to R.C. 2925.03(A)(2) and R.C. 2925.03(C)(3)(d), a felony of the third degree [Count I]; possession of marijuana in an amount greater than one thousand grams but less than five thousand grams pursuant to R.C. 2925.11(A) and R.C. 2925.11(C)(3)(d), a felony of the third degree [Count II]; aggravated trafficking (methamphetamine) pursuant to R.C. 2925.03(A)(2) and R.C. 2925.03(C)(1)(c), a felony of the third degree [Count III]; aggravated drug possession (methamphetamine) pursuant to R.C. 2925.11(A) and R.C. 2925.11(C)(1)(b), a felony of the third degree [Count IV]; aggravated drug trafficking (clonazolam) pursuant to R.C. 2925.03(A)(1) and R.C. 2925.03(C)(1)(a), a felony of the fourth degree [Count V]; aggravated drug possession pursuant to R.C. 2925.11(A) and R.C. 2925.11(C)(1)(a), a felony of the fifth degree [Count VI]; improperly handling firearms in a motor vehicle pursuant to R.C. 2923.16(B) and R.C. 2923.16(I), a felony of the fourth degree [Count VII]; and carrying a concealed weapon pursuant to R.C. 2923.12(A)(2) and R.C. 2923.12(F)(1), a felony of the fourth degree [Count VIII]. The indictment also contained multiple firearm specifications, specifications for forfeiture of a gun in a drug case, and specifications for forfeiture of money in a drug case. Appellant entered pleas of not guilty.

{¶15} On February 5, 2021, appellant filed a motion to suppress evidence seized during the traffic stop. The matter proceeded to evidentiary hearing on April 30, 2021, and the trial court overruled the motion to suppress by judgment entry dated May 6, 2021.

{¶16} On August 4, 2021, appellant withdrew his pleas of not guilty and entered ones of no contest upon Counts II, III, VI, VII, and VIII. The remaining counts were dismissed. Appellant was ordered to serve a total aggregate prison term of two and a half years.

{¶17} Appellant now appeals from the trial court's judgment entry of conviction and sentence, incorporating its judgment entry overruling the motion to suppress.

{¶18} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶19} "I.  THE TRIAL COURT ERRED IN FAILING TO RECOGNIZE THAT R.C. 4511.34 IS UNCONSTITUTIONALLY VOID FOR VAGUENESS."

{¶20} "II. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT COMMITTED A TRAFFIC VIOLATION."

{¶21} "III.  THE TRIAL COURT ERRED IN OVERRULING JOHNSON'S MOTION TO SUPPRESS."

**ANALYSIS**

I., II.

{¶22} Appellant's first two assignments of error are related and will be considered together.  In his first assignment of error, appellant argues R.C. 4511.34, the statute which proscribes following too closely, is unconstitutionally void for vagueness. Appellant further argues in his second assignment of error that the trial court erred in finding appellant committed a traffic violation based upon an unconstitutional statute. We disagree.

{¶23} Appellant was traffic-stopped by the trooper because he was observed committing a violation of R.C. 4511.34(A), the traffic code section which proscribes following too closely. The section states in pertinent part: "The operator of a motor vehicle * * * shall not follow another vehicle * * * more closely than is reasonable and prudent, having due regard for the speed of such vehicle * * * and the traffic upon and the condition of the highway."

{¶24} In the instant case, Dickerson testified appellant was traveling around 70 mph and was approximately two car lengths behind the vehicle in front of him. At that speed, a safe distance would have been seven car lengths, in Dickerson's estimation, and appellant was therefore following more closely than was reasonable and prudent for the conditions. Dickerson also testified that appellant made an unsafe lane change, pulling in front of an SUV in a manner which caused the SUV to be following too closely. Dickerson testified to the traffic violations and narrated his dashcam video, which was admitted into evidence at the suppression hearing as appellee's Exhibit A. The trial court noted in the judgment entry that it observed two traffic violations on the video.[1]

{¶25} Appellant asserts, however, that R.C. 4511.34 is unconstitutionally void for vagueness and cannot be the basis for a constitutional traffic stop. Upon our review of the record, appellant did not raise this constitutional argument before the trial court. Appellant may not raise a constitutional argument for the first time on appeal. *In re L.Z.*, 5th Dist. No. 15-CA-36, 2016-Ohio-1337, 61 N.E.3d 776, ¶ 29. Generally, a constitutional

---

[1] Appellant's traffic citation is not in the record before us. The record indicates appellant's traffic charges were bound over to Common Pleas court from municipal court, and the traffic charges were driving under suspension and following too close under Mansfield Municipal Court case number 2020TRD06595.

argument that is not raised in the trial court is "waived and cannot be raised for the first time on appeal." *State v. Brewer,* 2nd Dist. Montgomery No. 26153, 2015-Ohio-693, 2015 WL 848406, ¶ 36. We may still "consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it." *Id.,* citing *In re M.D.,* 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus.

{¶26} Notwithstanding the issue of waiver, we find appellant's constitutional arguments to be unpersuasive. We first note statutes enjoy a strong presumption of constitutionality. *State v. Galloway,* 5th Dist., 2015-Ohio-4949, 50 N.E.3d 1001, ¶ 18. "An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State v. Cook,* 83 Ohio St.3d 404, 409, 700 N.E.2d 570 (1998), *superseded by statute on other grounds*, citing *State ex rel. Dickman v. Defenbacher,* 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus. Additionally, statutes and rules are to be construed so as to avoid unreasonable or absurd results. *State ex rel. Asti v. Ohio Dept. of Youth Servs.,* 107 Ohio St.3d 262, 2005-Ohio-6432, 838 N.E.2d 658, ¶ 28.

{¶27} Appellant's void-for-vagueness argument in the context of R.C. 4511.34 has been examined repeatedly and overruled. See, e.g., *State v. Bush*, 92 Ohio Law Abs. 63, 193 N.E.2d 195, 196 (7th Dist.1962); *State v. Gonzalez*, 43 Ohio App.3d 59, 539 N.E.2d 641 (6th Dist.1987); *City of Cleveland v. Chebib*, 8th Dist. Cuyahoga No. 73073, 1998 WL 398216, *2; *State v. Quinones*, 7th Dist. Mahoning No. 02 CA 243, 2003-Ohio-6727, ¶ 36; *State v. Maga*, 2nd Dist. Montgomery No. 21998, 2008-Ohio-423, ¶ 55.

{¶28} Appellant argues the trial court should have sustained the motion to suppress because the stop was premised upon an unconstitutional statute. Having overruled appellant's constitutional argument, we further find the stop was permissible. A police officer may perform an investigatory stop under certain circumstances. The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Because the "balance between the public interest and the individual's right to personal security" tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

{¶29} In *Terry,* the Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. See, *State v. Chatton,* 11 Ohio St.3d 59, 61, 463 N.E.2d 1237 (1984). The Ohio Supreme Court has emphasized that probable cause is not required to make a traffic stop; rather the standard is reasonable and articulable suspicion. *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23.

{¶30} The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews,* 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271 (1991); *State v. Bobo,* 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988). The Supreme Court of the United States has reemphasized the importance of reviewing the totality of the circumstances in making a reasonable-suspicion determination:

> When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.
>
> *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), citing *United States v. Cortez,* 449 U.S. 411, 417–418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

{¶31} Traffic stops based upon an officer's observation of a traffic violation are constitutionally permissible. *State v. Myers*, 2021-Ohio-4087, 180 N.E.3d 98, ¶ 25 (5th Dist.), citing *Dayton v. Erickson,* 76 Ohio St.3d 3, 11–12, 665 N.E.2d 1091 (1996). In the instant case, the trooper observed appellant commit the offense of following too closely and made an unsafe lane change.

{¶32} Appellant argues the instant case is similar to *State v. Woods*, 5th Dist. No. 18-CA-13, 2018-Ohio-3379, 117 N.E.3d 1017, a state's appeal of a trial court's decision to grant a motion to suppress. In *Woods,* the defendant was stopped for following too close but the trial court found no traffic violation was committed because the defendant was braking to maintain distance from cars in front of him as other vehicles merged into his lane as they spotted the police car monitoring traffic. *Id.* at ¶ 17. The trial court also found that the dashcam video contradicted the trooper's testimony. *Id.* at ¶ 18. We noted that we are bound to accept the factual findings of the trial court if they are supported by competent, credible evidence. *Id.,* citing *State v. Fanning*, 1 Ohio St.3d 19, [20], 437 N.E.2d 583 (1982). We agreed with the trial court's conclusion regarding the absence of a traffic violation in *Woods* because the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *Id., citing State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; additional citations omitted.

{¶33} *Woods* is inapposite from the instant case, however, because there is no discrepancy between the trooper's testimony and the dashcam video; the trial court heard the testimony, viewed the video, and found appellant committed two traffic violations. Upon our review of the record we find the factual findings of the trial court are supported

by competent, credible evidence. We conclude appellant has not established R.C. 4511.34 is unconstitutional; the trooper made a valid stop based upon the statute; and the trial court's findings are supported by clear and convincing evidence.

{¶34} Appellant's first and second assignments of error are not well-taken and are overruled.

III.

{¶35} In his third assignment of error, appellant argues the trial court should have granted his motion to suppress. We disagree.

{¶36} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶37} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial

court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 620 N.E.2d 906 (8th Dist.1994).

{¶38} In the instant case, appellant argues first that the traffic stop was illegal for the reasons cited supra in his first and second assignments of error, therefore all evidence flowing from the stop must be suppressed. In light of our overruling of those arguments, we further find the trial court did not err in overruling the motion to suppress based upon the traffic stop.

{¶39} Appellant further argues, however, that evidence seized as a result of an improper vehicle inventory should also be suppressed. We note the evidentiary hearing was limited to the grounds of appellant's motion: whether the traffic stop was supported by reasonable and articulable suspicion. T. 5-8. Any issue pertaining to the inventory of appellant's vehicle was not explored at the suppression hearing, and the record before us indicates only that the vehicle was moved to the OSHP post and later inventoried there. Evidence was ultimately found in this case that is not mentioned in the record before us, to wit, methamphetamine, six pounds of marijuana, and a pump-action shotgun. It is not

clear from the record, or from appellant's argument, which pieces of evidence were found during the inventory. The basis for appellant's challenge to the inventory is not in evidence and the inventory was not at issue in the suppression hearing.

{¶40} Arguments not raised at the suppression hearing may not be asserted for the first time on appeal. *State v. Neale*, 5th Dist. Stark No. 2013CA00247, 2014-Ohio-4368, ¶ 29, citing *State v. Bing*, 134 Ohio App.3d 444, 449, 731 N.E.2d 266 (9th Dist.1999).

{¶41} We conclude appellant has not demonstrated the trial court erred in overruling his motion to suppress. Appellant's third assignment of error is overruled.

## CONCLUSION

{¶42} Appellant's three assignments of error are overruled and the judgment of the Richland County Court of Common Pleas is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Wise, John, J., concur.