[Cite as *State v. Palmer*, 2022-Ohio-1968.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2021 AP 08 0019 |
| | : | |
| DAVID W. PALMER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:         Appeal from the Tuscarawas County
                                 Court of Common Pleas, Case No. 2020
                                 CR 12 0447

JUDGMENT:                        AFFIRMED

DATE OF JUDGMENT ENTRY:          June 10, 2022

APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

RYAN STYER                                 DONOVAN R. HILL
TUSCARAWAS COUNTY PROSECUTOR                122 Market Ave. N.
                                           Suite 101
KRISTINE W. BEARD                          Canton, OH 44702
125 E. High Ave.
New Philadelphia, OH 44663

*Delaney, J.*

{¶1} Defendant-Appellant David W. Palmer appeals his conviction and sentence by the Tuscarawas County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

### Indictment

{¶2} On December 7, 2020, the Tuscarawas County Grand Jury indicted Defendant-Appellant David W. Palmer on two counts: (1) operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them – OVI, a third-degree felony in violation of R.C. 4511.19(A)(1)(a)(G)(1)(e), and (2) operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them – OVI, a fourth-degree felony in violation of R.C. 4511.19(A)(1)(a)(G)(1)(d). Palmer was arraigned and entered a not guilty plea to the charges. The matter went forward for jury trial on May 19, 2021. The following facts were adduced at trial.

### Speedway Gas Station

{¶3} Deborah Sieg is employed as a cashier by Speedway Gas Station, located at 264 West High Street, New Philadelphia, Ohio. From her location as a cashier at the gas station, she can see the interior of the store and all eight gas pumps outside. While the Speedway Gas Station sells alcoholic beverages in the store, it prohibits her from selling alcohol to a visibly inebriated person. In her experience as a cashier at Speedway, she has occasionally encountered customers under the influence of alcohol. She does not have any specialized training to recognize someone under the influence of alcohol. Sieg described an inebriated person as someone who could not stand still or straight, slurred their words, smelled of alcohol, or could not function at the cash register.

{¶4} On September 20, 2020, Deborah Sieg was working her 2:00 p.m. to 10:00 p.m. shift at the Speedway Gas Station. At approximately 8:50 p.m., while she was working on the store floor, she saw a man in the store's "beer cave." The man was standing there with the zipper to his pants down. He was stumbling and swaying, while fumbling with change. When she saw the man leave the store with an alcoholic beverage in his back pocket, Sieg chased after him because he had not paid for the beverage. She told him to give it back to her, which he did. From what she observed of the man and his actions, she felt the man was under the influence of alcohol.

{¶5} Twenty to thirty minutes later, Sieg was working at the cash register when the same man came to the counter to purchase an alcoholic beverage. Sieg refused the sale because she observed that the man continued to show signs of inebriation. She smelled alcohol on his breath, he was swaying, his speech was slurred, and his fly was down. The man then asked her if she would sell him three dollars of gas, which she sold to him. The man left the store and Sieg watched him go to a vehicle parked at pump eight, the farthest gas pump from the store.

{¶6} Sieg watched the man at the gas pump because she wanted to see if he was going to get in the passenger or driver's seat of the car. She also wanted to make sure he did not fall while he was pumping gas. She observed him pump the gas and then she saw the man get into the driver's seat of the car. When the man got into the car, at 9:20 p.m., she called the New Philadelphia Police Department because she was concerned that the man was driving while impaired. She gave the police a description of the car and the driver, and the license plate number. While she was on the phone with

the police, a customer came into the store and stated that a male customer at pump eight had urinated at the pump.

### The Stop

{¶7} Patrolman Wayne Clark, with the New Philadelphia Police Department, was on duty when he received the call from dispatch regarding an alleged intoxicated male driver leaving the Speedway Gas Station. Dispatch gave Officer Clark a description of the vehicle and the license plate number as reported by Sieg. When Officer Clark received the call from dispatch, he was driving past the Speedway Gas Station, and he immediately encountered the described vehicle in front of him. The vehicle matched Sieg's description and the license plate number given by Sieg was off by one letter.

{¶8} Officer Clark followed behind the vehicle until it turned into the parking lot of a closed business. Officer Clark did not observe any traffic or equipment violations while he was driving behind the vehicle. When the vehicle turned into the parking lot, Officer Clark activated a traffic stop based on the information he had received from Sieg's call to dispatch.

{¶9} Patrolman Kurt Olson of the New Philadelphia Police Department received the same call from dispatch regarding the alleged intoxicated driver reported by Sieg. Officer Olson was familiar with Sieg and had dealt with her many times. He pulled behind Officer Clark as he made the traffic stop. He got out of his cruiser and approached the vehicle with Officer Clark. There was no dash cam video of the traffic stop presented at trial because the video from that stop, and other dash cam videos, were accidentally deleted by another New Philadelphia police officer.

{¶10} Officer Clark approached the driver's side of the vehicle and asked the driver for his license. Officer Clark did not recognize the driver of the vehicle. Officer Olson recognized the driver from interacting with him on previous occasions and knew the driver was David W. Palmer. Officer Olson, however, was not the investigating officer. The driver of the vehicle said he did not have a license on him. Officer Clark asked the driver for his Social Security number to verify his identity, and the driver quickly rambled off a number. Officer Clark asked him to slow down and repeat the number, at which time the driver became agitated.

{¶11} As he was speaking with the driver, Officer Clark observed the driver had slurred speech, bloodshot eyes, and an odor of alcohol coming from him. When asked, the driver admitted to drinking alcohol. He did not specify how much he drank or what he had drank. Officer Clark asked the driver to exit the vehicle so he could conduct field sobriety tests. Officer Olson noticed the driver was slow getting out of the vehicle and appeared to be off-balance.

{¶12} Officer Olson described the driver as confrontational when he was asked to exit the vehicle. Officer Clark asked the driver for his Social Security number again, and the driver quickly rambled a number off. The driver became more agitated and made a threat towards Officer Olson, saying "he would end him." Based on the threat, Officer Clark handcuffed the driver for the police officer's safety. Officer Clark and Officer Olson determined they could not safely conduct field sobriety tests on the driver due to his confrontational behavior and threat towards Officer Olson. Officer Clark arrested the driver for OVI based on his observations of the driver.

{¶13} Officer Clark took the driver to the New Philadelphia Police Department, where the jail was located. The driver was agitated and swearing in the cruiser as he was transported during the short drive to the jail.

{¶14} At the police station, the driver of the vehicle continued to act agitated. Sergeant Morris, Clark's direct supervisor with the New Philadelphia Police Department, was at the jail when Officer Clark arrived with the driver. Sgt. Morris recognized the driver as David W. Palmer and identified him to Officer Clark. After doing a search post-arrest in the jail cell area, the officers asked Palmer to remove his piercing. Palmer was uncooperative and made an aggressive move towards Sgt. Morris. Officer Olson, who had stayed at the scene with Palmer's vehicle, received a call from dispatch that there was a fight at the jail. He left the scene and arrived at the jail where he saw Officer Clark and Sgt. Morris struggling to detain Palmer in an "intox cell." Officer Olson went into the intox cell to assist, and the three officers were able to detain Palmer. A video of the incident was shown to the jury. Officer Olson could smell the odor of alcohol coming from Palmer as they struggled to detain him in the cell.

{¶15} Because of Palmer's physical aggression, Sgt. Morris determined they could not safely conduct field sobriety tests on Palmer. There was a mandate prohibiting the use of breath tests to determine intoxication levels because of the COVID pandemic. The New Philadelphia Police Department did not do blood draws to determine blood alcohol levels due to the requirement of a search warrant and only conducted urine tests for suspected drug usage.

{¶16} Based on Sgt. Morris's identification of Palmer, Officer Clark checked the Bureau of Motor Vehicles database and LEADS to review Palmer's driving records. The

LEADS records contained Palmer's date of birth, Social Security number, and physical description. From the records, Officer Clark determined Sgt. Morris had correctly identified Palmer as the driver of the vehicle. The records showed that Palmer's driver's license had been suspended and he had prior OVI convictions from 2009 in the Carroll County Municipal Court, 2013 in the Alliance Municipal Court, 2013 in the Carroll County Municipal Court, 2014 in the Stark County Court of Common Pleas, and 2014 in the Carroll County Court of Common Pleas. Based on the records and investigation by Officer Clark, he sent a report to the prosecutor's office for its review.

### Verdict

{¶17} At the close of the State's case, Palmer moved for a dismissal of the charges pursuant to Crim.R. 29. The trial court denied the motion.

{¶18} The jury returned a verdict of guilty on the charges of (1) operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them – OVI, a third-degree felony in violation of R.C. 4511.19(A)(1)(a)(G)(1)(e), and (2) operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them – OVI, a fourth-degree felony in violation of R.C. 4511.19(A)(1)(a)(G)(1)(d). Sentencing was scheduled for July 16, 2021.

### Sentencing

{¶19} The parties appeared for the sentencing hearing on July 16, 2021. The State argued the charges were allied offenses and the State elected Count One, a felony of the third degree, for purposes of sentencing.

{¶20} The trial court sentenced Palmer to serve 30 months in prison on Count One and receive a 10-year license suspension. He was assessed six points on his driving record and assessed a $1,500 fine.

{¶21} It is from this conviction and sentence that Palmer now appeals.

**ASSIGNMENTS OF ERROR**

{¶22} Palmer raises four Assignments of Error:

{¶23} "I. THE APPELLEE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT, AND THE CONVICTION MUST BE REVERSED.

{¶24} "II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED.

{¶25} "III. THE APPELLANT WAS DENIED A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT.

{¶26} "IV. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

**ANALYSIS**

**I. and II.**

{¶27} In his first and second Assignments of Error, Palmer contends his convictions for violations of R.C. 4511.19(A)(1)(a) were against the sufficiency and manifest weight of the evidence. We consider the two Assignments of Error together because they are interrelated.

{¶28} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶29} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶30} In his appeal, Palmer raises two arguments that his convictions were against the sufficiency and manifest weight of the evidence. He first contends there was insufficient evidence to prove beyond a reasonable doubt that he was under the influence

of alcohol. Second, he argues the State failed to provide any reliable evidence at trial to identify Palmer as the man who was arrested on September 20, 2020 for OVI.

{¶31} Palmer was charged and convicted of (1) operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them – OVI, a third-degree felony in violation of R.C. 4511.19(A)(1)(a)(G)(1)(e), and (2) operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them – OVI, a fourth-degree felony in violation of R.C. 4511.19(A)(1)(a)(G)(1)(d). Pursuant to R.C. 4511.19(A)(1)(a), "[n]o person shall operate any vehicle, * * * within this state, if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."

## Violation of R.C. 4511.19(A)(1)(a)

{¶32} Palmer first argues there was no evidence that he was under the influence of alcohol beyond the witnesses' observations. The officers did not conduct field sobriety tests or chemical tests to determine if he was under the influence of alcohol. When Officer Clark initiated the traffic stop, he admittedly did not observe Palmer commit any traffic violations and did not observe any equipment violations on Palmer's motor vehicle. We note that Palmer did not file a motion to suppress the traffic stop.

{¶33} Officer Clark initiated the traffic stop based on Sieg's call to dispatch that she observed Palmer's behavior at the Speedway Gas Station, and he appeared to be under the influence of alcohol. "It is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated." *State v. Scott*, 5th Dist. Fairfield No. 2020 CA 00015, 2021-Ohio-156, 2021 WL 223811, ¶ 30 quoting *Columbus v. Mullins*, 162 St 419, 123 N.E.2d 422 (1954); *State v. Schmidt*,

101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446 (even when the final results of a field sobriety test are excluded because they were not administered in substantial compliance, an officer may testify as a lay witness about the officer's observation of the defendant's performance); *State v. Ricer*, 5th Dist. Ashland No. 17-COA-023, 2018-Ohio-426.

{¶34} Sieg had two separate interactions with Palmer. In the first instance, she observed him walking out of the store with an alcoholic beverage in his back pocket for which he had not paid. She saw that his zipper to his pants was down. He was stumbling and swaying. In the second instance, Palmer came to the store counter and attempted to purchase another alcoholic beverage. Sieg refused the sale because she observed that Palmer showed signs of inebriation. She smelled alcohol on his breath, he was swaying, his speech was slurred, and his zipper was still down. As she called the police to report that she believed that Palmer was driving under the influence of alcohol, a customer reported to her that Palmer had urinated on a gas station pump.

{¶35} Officer Clark did not observe Palmer commit a traffic violation, but traffic stops may be permissible when another person supplies information to an officer who has not personally observed a violation. *State v. Myers*, 5th Dist. No. 21CA060027, 2021-Ohio-4087, 180 N.E.3d 98, 2021 WL 5368016, ¶ 25. The United States Supreme Court has "firmly rejected the argument 'that reasonable cause for a[n investigative stop] can only be based on the officer's personal observation, rather than on information supplied by another person.' " (Brackets sic.) *State v. Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, 175 N.E.3d 527, citing *Navarette v. California*, 572 U.S. 393, 397, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014), internal citation omitted.

{¶36} The courts have recognized three categories of informants: (1) citizen informants; (2) known informants, i.e., those from the criminal world who have previously provided reliable tips; and (3) anonymous informants, who are comparatively unreliable. *State v. Myers*, 5th Dist. No. 21CA060027, 2021-Ohio-4087, 180 N.E.3d 98, 2021 WL 5368016, ¶ 27 citing *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 720 N.E.2d 507 (1999). In *Weisner*, the Ohio Supreme Court discussed the credibility to be given to an identified citizen tipster:

> The [United States Supreme Court] has further suggested that an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: '[I]f an unquestionably honest citizen comes forward with a report of criminal activity-which if fabricated would subject him to criminal liability-we have found rigorous scrutiny of the basis of his knowledge unnecessary.' *Illinois v. Gates*, 462 U.S. at 233–234, 103 S.Ct. at 2329–2330, 76 L.Ed.2d at 545.

*Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 720 N.E.2d 507.

{¶37} Officer Olson testified he had previous interactions with Sieg and was familiar with her. Her call to the police "was not about a past crime but rather was about alleged criminal activity that was then afoot." *Tidwell*, *supra* at ¶ 44. Finally, a very brief time period elapsed between Sieg's call to dispatch and Officer Clark's traffic stop of Palmer. When Officer Clark received the call from dispatch, Palmer's car was directly in front of his police cruiser. Again, as the Ohio Supreme Court discussed in *Tidwell*:

> It is undisputed that [the officer] stopped the vehicle because he believed there was a public-safety concern. Given the information then available to

[the officer], it was reasonable under the totality of the circumstances for him to approach the vehicle in this public area and briefly detain its driver in order to make a most basic inquiry as to whether an immediate danger to public safety existed.

*State v. Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, 175 N.E.3d 527.

{¶38} When Officer Clark and Officer Olson made contact with Palmer, it confirmed to the officers that Palmer was impaired "based on what he personally smelled, saw, and heard." *Id.*, at ¶ 50. Palmer admitted to Officer Clark that he had been drinking alcohol that evening. The officers testified that Palmer had bloodshot eyes, slurred speech, and the odor of alcohol on his breath. He was slow to exit the vehicle and appeared to be off-balance.

{¶39} Officer Clark, Officer Olson, and Sgt. Morris testified they could not safely conduct field sobriety tests on Palmer due to Palmer's behavior. At the traffic stop, he was agitated and made a threat towards Officer Olson. At the jail, when asked to remove a piercing, Palmer became aggressive and threatened Sgt. Morris, requiring three officers to detain Palmer in the intox cell. A video was shown to the jury of the incident in the jail.

{¶40} While no field sobriety tests were conducted on Palmer, four witnesses testified as to their observations of Palmer's demeanor and behavior on September 20, 2020 that led them to conclude that Palmer was under the influence of alcohol. Palmer was not charged with violating R.C. 4511.19(A)(1)(b), the "per se" section, which would have required the State to prove that he drove with a prohibited blood or breath alcohol content.

{¶41} The phrase "under the influence of intoxicating liquor" has been defined as "[t]he condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle." *State v. Wise*, 5th Dist. Guernsey No. 2008-CA-9, 2008-Ohio-7003, 2008 WL 5427978, ¶ 77 quoting *Toledo v. Starks*, 25 Ohio App.2d 162, 166, 267 N.E.2d 824 (6th Dist.1971). *See, also, State v. Steele*, 95 Ohio App. 107, 111, 117 N.E.2d 617 (3rd Dist.1952) ("[B]eing 'under the influence of alcohol or intoxicating liquor' means that the accused must have consumed some intoxicating beverage, whether mild or potent, and in such quantity, whether small or great, that the effect thereof on him was to adversely affect his actions, reactions, conduct, movements or mental processes, or to impair his reactions, under the circumstances then existing so as to deprive him of that clearness of the intellect and control of himself which he would otherwise possess"). *See, State v. Henderson*, 5th Dist. Stark No. 2004-CA-00215, 2005-Ohio-1644 at ¶ 32. [Citing *State v. Barrett* (Feb. 26, 2001), Licking App. No. 00CA 47].

{¶42} Circumstantial evidence will sustain a conviction for driving under the influence. *State v. Neff*, 104 Ohio App. 289, 148 N.E.2d 236 (1957); *State v. Starks*, 25 Ohio App.2d at 163, 267 N.E.2d at 827. "Proof of factual circumstance concerning the defendant's conduct and activities preceding and following the driving of the vehicle [one] is charged to have driven while under the influence of intoxicating liquor is relevant to the ultimate issue of whether [a] defendant was driving a vehicle while under the influence of intoxicating liquor." *Starks*, 25 Ohio App.2d at 163, 267 N.E.2d at 827.

{¶43} Upon this record, there was sufficient evidence to demonstrate that Palmer had operated his vehicle while under the influence of alcohol. The jury considered the credibility of the witnesses and weighed the evidence to determine that Palmer was under the influence of alcohol when he operated his vehicle on September 20, 2020.

### Identification

{¶44} Palmer next contends that the in-court identification of Palmer was inherently suggestive and unreliable and therefore insufficient to identify Palmer as the offender. Palmer argues the State used leading questions to elicit the witnesses' identification of Palmer, rendering their identification as unreliable.

{¶45} The State has the burden to prove every element of the crime charged beyond a reasonable doubt, including the identity of the person who committed the crime. *State v. Smith*, 4th Dist. Pickaway No. 19CA33, 2021-Ohio-2866, 2021 WL 3708056, ¶ 90 citing *State v. Bailey*, 2nd Dist. Montgomery No. 27177, 2017-Ohio-2679, at ¶ 18; *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 15 (Internal citations omitted). However, there is no general requirement that the defendant must be visually identified in court by a witness. *State v. Smith*, 5th Dist. Stark No. 2019CA00156, 2020-Ohio-3618, ¶ 13; *State v. Lawwill*, 12th Dist. Butler No. CA2007-01-014, 2008-Ohio-3592, 2008 WL 2789278, ¶ 11, appeal not allowed, 120 Ohio St.3d 1456, 2008-Ohio-6813, 898 N.E.2d 969; *State v. Collins*, 8th Dist. Cuyahoga No. 98350, 2013-Ohio-488, ¶ 19; *Cleveland v. Williams*, 8th Dist. Cuyahoga No. 101588, 2015-Ohio-1739, ¶ 25. Direct or circumstantial evidence is sufficient to establish the identity of the accused as the person who committed the crime. *State v. Smith,* 2020-Ohio-3618, ¶ 13; *State v. Irby*, Mahoning App. No. 03 MA 54, 2004–Ohio–5929, ¶ 16–21.

{¶46} Sieg was asked if she recognized Palmer as the customer in question. She stated, "yes, I do." (T. 190-191). The State asked Sieg again if she ultimately recognized the driver in the courtroom, to which she responded in the affirmative. (T. 219). The State followed up with asking if "he was to my far right seated at the table next to counsel," and Sieg responded, "he is." (T. 219).

{¶47} Officer Clark initiated the traffic stop of Palmer's vehicle based on Sieg's description of the vehicle and the license plate number, which was one letter off. She had also given dispatch a description of the driver. The State asked Officer Olson about Palmer's identity:

A. I know when he asked him for his driver's license, he said that he didn't have one. Asked him for his social security number. Initially said he didn't know it and then he just rattled off real fast several times making it difficult to get. I had already told, I believe Officer Clark also recognized him, but I had dealt with him on previous occasions, also had dealt with him from a dispatch standpoint, you know, having to help book him in, book him out, so I knew who he was.

Q. Okay. So you heard, you recognize the Defendant in here as David W. Palmer?

A. Yes.

Q. Okay. And you had known him from previous interactions?

A. Correct.

Q. Okay. And he is the person that you and Patrolman Clark are dealing with that, at that location, who's ultimately arrested and taken to the jail?

A. Correct.

* * * Okay. Your honor, I'd like the record to reflect that the witness has identified the Defendant.

(T. 282-283).

{¶48} Sgt. Morris testified he recognized Palmer when Officer Clark brought him to the jail. (T. 321-322). Sgt. Morris identified Palmer to Officer Clark. (T. 226). Based on Sgt. Morris' identification of Palmer, Officer Clark reviewed the BMV and LEADS records, which included a birth date and physical description of the person named David W. Palmer. (T. 231).

{¶49} In this case, there was ample circumstantial evidence to allow the jury to conclude that Palmer was the individual who was operating a motor vehicle while under the influence of alcohol on September 20, 2020. Further, Sieg and Officer Olson provided in-court identification of Palmer.

{¶50} Based on the foregoing and the entire record in this matter, we find Palmer's conviction is not against the sufficiency or the manifest weight of the evidence. The jury heard the witnesses, evaluated the evidence, and was convinced of Palmer's identification and guilt of driving under the influence.

{¶51} Palmer's first and second Assignments of Error are overruled.

**III.**

{¶52} In his third Assignment of Error, Palmer contends he was denied a fair trial due to prosecutorial misconduct. He argues three instances of prosecutorial misconduct by (1) asking leading questions when witnesses were asked to identify Palmer; (2)

improperly eliciting opinion testimony from Officer Clark as to Palmer's alleged guilt; and (3) expressing his personal opinion as to Palmer's guilt during closing argument.

{¶53} We note that Palmer's trial counsel failed to object and bring the alleged errors to the attention of the trial court, therefore Palmer has waived all but plain error review. Under the plain error rule, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). The rule places the following limitations on a reviewing court's determination to correct an error despite the absence of timely objections at trial: (1) "there must be an error, i.e. a deviation from a legal rule," (2) "the error must be plain," that is an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Wood*, 5th Dist. Knox No. 20CA000010, 2020-Ohio-4251, 2020 WL 5092841, ¶ 18 citing *State v. Dunn*, 5th Dist. Stark No. 2008-CA-00137, 2009-Ohio-1688, 2009 WL 943968, ¶ 89, citing *State v. Morales*, 10th Dist. Franklin Nos. 03-AP-318, 2004-Ohio-3391, 2004 WL 1446117, ¶ 19.

{¶54} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. *Sunbury v. Sullivan*, 5th Dist. Delaware No. 11CAC030025, 2012-Ohio-3699, 2012 WL 3525617, ¶ 30 citing *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990). In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). A trial is not unfair, if, in the context of the entire trial, it appears clear beyond a reasonable doubt the jury

would have found the defendant guilty even without the improper comments. *State v. Treesh*, 90 Ohio St.3d 460, 464, 2001–Ohio–4, 739 N.E.2d 749. Furthermore, both the prosecution and the defense have wide latitude during opening and closing arguments.

{¶55} However, a prosecutor may not express his personal belief or opinion as to the credibility of a witness, the guilt of an accused or allude to matters that are not supported by admissible evidence. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). The wide latitude given the prosecution during closing arguments "does not 'encompass inviting the jury to reach its decision on matters outside the evidence adduced at trial.' " *State v. Hart*, 8th Dist. No. 79564, 2002–Ohio–1084, at 3, citing *State v. Freeman*, 138 Ohio App.3d 408, 419, 741 N.E.2d 566 (1st Dist. 2000).

{¶56} Palmer first contends State improperly asked leading questions of the witnesses to elicit identification of Palmer as the perpetrator. Based on our determination of Palmer's first and second Assignments of Error as they relate to Palmer's identification, we find no plain error.

{¶57} Palmer next contends the prosecutor engaged in prosecutorial misconduct when it solicited the opinion of Officer Clark as to Palmer's guilt of the crime. The State asked Officer Clark, "were you of the belief that the Defendant was guilty of felony OVI?" (T. 232). Palmer's counsel did not object to the inquiry. Opinion testimony by police as to the guilt or innocence of a criminal defendant has been held inadmissible as a violation of due process. *State v. Vance*, 5th Dist. Ashland No. 2007-COA-035, 2008-Ohio-4763, 2008 WL 4286633, ¶ 32. As the State notes in its appellate brief, the statement by Officer Clark must be considered in context. The State's question was not about Palmer's guilt

or innocence, rather it was about determining whether Palmer could be charged with felony OVI and submitting a report to the prosecutor's office for its review.

{¶58} Prior to the question regarding Palmer's alleged guilt, the State asked if after Sgt. Morris identified Palmer, were the officers able to get any more information regarding Palmer. (T. 226). Officer Clark responded that he was able to review Palmer's driving record, which was standard practice and procedure after an arrest, and determined he had prior OVI convictions and his license was suspended. (T. 226). The State then asked, "And specifically with OVI's, I'm assuming for this very reason that's one of the reasons that you are checking." Officer Clark answered, "Correct. Because OVI's can escalate to felonies, so we do a check on that." (T. 227). The State reviewed with Officer Clark the collected certified judgment entries of Palmer's prior OVI convictions. (T. 229-232). The line of questioning then goes on:

Q. So those correlate with the information that you had at the time concerning Mr. Palmer's convictions?

A. Yes.

Q. All right. So based on that, were you of the belief that the Defendant was guilty of felony OVI?

A. That's correct.

Q. And would have submitted your report to our office?

A. That is correct.

(T. 232). We find no prosecutorial misconduct when the State's question to Officer Clark, while inartful, is considered in context.

{¶59} Palmer finally argues the prosecutor improperly interjected his opinion during his closing arguments. He made the following statements:

I don't think that there can be any reasonable doubt, of any kind, really any doubt in your mind that this Defendant, David Palmer, on that date operated a motor vehicle and that it was in the venue, jurisdiction of this Court. I don't think that there can be any dispute about that. * * * I don't think there can be any doubt in your mind that David W. Palmer consumed alcohol. * * * So I don't think that there can be any reasonable doubt that David W. Palmer consumed alcohol and operated the vehicle.

(T. 357-358).

{¶60} In reviewing the prosecutor's four "I" statements in the context of his closing statement within the entire trial, we find only harmless error. It appears clear beyond a reasonable doubt the jury would have found the Palmer guilty even without the comments.

{¶61} Palmer's third Assignment of Error is overruled.

**IV.**

{¶62} In Palmer's fourth Assignment of Error, he contends he did not receive the effective assistance of counsel. Palmer claims his trial counsel was ineffective for his failure to object to the prosecutor's leading questions during direct examination, to the prosecutor's question to Officer Clark regarding Palmer's alleged guilt, and to the prosecutor's opinion statements during closing argument.

{¶63} A claim for ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's

essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

{¶64} To warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel. *Lockhart v. Fretwell*, 506 U.S. 364, 370, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

{¶65} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "* * * need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697.

{¶66} We have thoroughly examined the issues raised by Palmer in his first, second, and third Assignments of Error that he uses to support his claim that he was denied effective assistance of counsel. We find Palmer was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel.

{¶67} Palmer's fourth Assignment of Error is overruled.

## CONCLUSION

{¶68} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Delaney, J.,

Wise, Earle, P.J. and

Wise, John, J., concur.