[Cite as *State v. Johnson*, 2022-Ohio-4246.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

DAVID JOHNSON,

        Defendant-Appellant.

CASE NO. 2021-L-135

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2020 CR 000857

**O P I N I O N**

Decided: November 28, 2022
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Ruth Fischbein-Cohen*, 3552 Severn Road, Suite 613, Cleveland Heights, OH 44118 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, David Johnson, appeals his convictions and sentence for multiple counts of Aggravated Robbery, Kidnapping, Having Weapons While Under Disability, Petty Theft, and Receiving Stolen Property following a jury trial in the Lake County Court of Common Pleas. For the following reasons, Johnson's convictions and sentence are affirmed.

{¶2} On September 1, 2020, the Lake County Grand Jury returned an Indictment charging Johnson with the following: Aggravated Robbery (Count 1), a felony of the first

degree in violation of R.C. 2911.01(A)(1); Kidnapping (Count 2), a felony of the first degree in violation of R.C. 2905.01(A)(2); Having Weapons While Under Disability (Count 3), a felony of the third degree in violation of R.C. 2923.13(A)(2); Aggravated Robbery (Count 4), a felony of the first degree in violation of R.C. 2911.01(A)(1); Kidnapping (Count 5), a felony of the first degree in violation of R.C. 2905.01(A)(2); Kidnapping (Count 6), a felony of the first degree in violation of R.C. 2905.01(A)(2); Having Weapons While Under Disability (Count 7), a felony of the third degree in violation of R.C. 2923.13(A)(2); Petty Theft (Count 8), a misdemeanor of the first degree in violation of R.C. 2913.02(A)(4); Aggravated Robbery (Count 9), a felony of the first degree in violation of R.C. 2911.01(A)(1); Kidnapping (Count 10), a felony of the first degree in violation of R.C. 2905.01(A)(2); Having Weapons While Under Disability (Count 11), a felony of the third degree in violation of R.C. 2923.13(A)(2); Petty Theft (Count 12), a misdemeanor of the first degree in violation of R.C. 2913.02(A)(4); and Receiving Stolen Property (Count 13), a felony of the fourth degree in violation of R.C. 2913.51(A). Counts 1, 2, 4, 5, 6, 9, and 10 contained firearm specifications pursuant to R.C. 2941.145 and repeat violent offender specifications pursuant to R.C. 2941.149. Counts 3, 7, and 11 contained forfeiture specifications pursuant to R.C. 2941.1417 and R.C. 2981.04.

{¶3} On May 14, 2021, Johnson entered a plea of "Not Guilty" to the charges in the Indictment.

{¶4} Over the course of six days between November 12 and 19, 2021, Johnson's case was tried to a jury. The following testimony and evidence were presented:

{¶5} Shirley Shanklin testified that, at Thanksgiving 2019, her 2020 copper-colored Kia Sportage was stolen from the Bishop Park Apartments in Willoughby Hills,

2

Lake County, where she lived.[1]  She had purchased the vehicle in July 2019 for about $24,000.

**{¶6}**    Ralph Jones testified that, on the morning of December 19, 2019, he was leaving the Motel 6 in Willoughby, Lake County, to go to school.  As he was entering his vehicle, a man approached with a drawn gun.  Jones described the gun as being black and gray.  The man was wearing a skeleton mask with a black hood drawn close around his face and gloves.  Jones thought the man was black "by the tone of his voice."  The man put the gun to the side of Jones' head and told him to lay his head on the passenger's seat.  After asking Jones a few questions, the man returned to a "tan SUV" and left the Motel.[2]

**{¶7}**    Gary Sullivan testified that he was working at Sines Marathon in Painesville Township, Lake County, on the evening of January 16, 2020.  He was assisting a customer, Lisa Baker, who was purchasing lottery tickets.  Sullivan looked up to see a man in a black and white mask, a gray hoodie with sweatpants and gloves, pointing a black and silver gun at him.  The man asked Sullivan to give him the money and pushed Baker's head on the counter and pointed the gun at her head.  Sullivan gave the man the money in the register, about $200.  The man went outside taking Baker with him but she returned shortly after being taken outside.  A video recording (no sound) was played for the jury.  Sullivan described the man as white because "it just sounded like a white person * * * talking to me."

---

1.  Johnson's possession of the Kia Sportage was the basis for Count 13 of the Indictment.
2.  The events at Motel 6 were the basis for Counts 1 to 3 of the Indictment.

Case No. 2021-L-135

{¶8} Lisa Baker testified and described the incident at Sines Marathon on January 16. After the man forced her from the store, he told her she could re-enter. He departed in a "rusty orangey colored car."[3]

{¶9} Matthew Pepperney, a deputy officer with the Lake County Sheriff's Department, testified that, on January 16, 2020, he responded to a robbery reported at Sines Marathon. Deputies found shoe prints (or impressions) in the area where the suspect's vehicle had been parked and molds were made of the impressions.

{¶10} Nathan Sabol testified that, in the early morning of January 18, 2020, he was working as a supervisor at the BP station in Parkman, Geauga County. As he was exiting the store with trash for the dumpster, he met a male wearing a gray sweatsuit and holding a gun. The man pushed Sabol and a female customer to the counter and demanded the money in the register from the employee (Mike) behind the counter. Sabol could not identify the man's race.

{¶11} Cheryl Kovalak testified that, on January 18, 2020, she was working as a manager at the Dollar General in Chardon, Geauga County. After exiting her office that afternoon, she was met by a man wearing a gray hoodie, gray sweatpants, tan work boots, and neoprene gloves. He also had a black and white skeleton mask on. The man put a black gun to her head and forced her to the register. He took the money from the register and a safe and departed. She believed the man was black based on the sound of his voice. Kovalak was shown surveillance video from the Parkman BP and testified that the man who robbed the BP was dressed exactly like the man who robbed the Dollar General.

---

3. The events at Sines Marathon were the basis for Counts 4 to 8 of the Indictment.

Case No. 2021-L-135

**{¶12}** David Fay testified that, on January 18, 2020, he was at the Dollar General in Chardon. Before entering the store, he noticed a man walk quickly from behind the counter outside the store and enter a "SUV style vehicle" that had an "orangish-goldish color." The man was wearing gray sweatpants and a skeleton style mask.

**{¶13}** Allison Higgins testified that, on the evening of January 21, 2020, she was working at the Dollar General in Willoughby. She was behind the counter when a man confronted her with a black gun demanding that she open the register. He was wearing a dark-blue hoodie with matching sweatpants. He wore a black and white mask with "weird markings" near the eyes. She opened the register. He grabbed the money and fled. Higgins estimated the amount of money taken as somewhere between 150 and 1,000 dollars.

**{¶14}** Meghan Fortuna testified that she was at the Dollar General in Willoughby with her fiancé during the robbery. When they entered the store, she noted a "burnt orange looking color SUV" parked near their vehicle with an individual in the driver's seat. Fortuna and her fiancé were the only customers in the store during the robbery. When they left after the robbery, the burnt orange vehicle was gone.[4]

**{¶15}** Demareo Simmons testified that, on the evening of January 25, 2020, he was working at the Euclid Gas Mart in Euclid, Cuyahoga County, with a cashier. A little before closing, a man entered the store "covered from head to toe," including a mask, hoodie, and sweatpants, with a gun. He grabbed Simmons and pushed him against the plexiglass in front of the register and told the cashier that he wanted the money. The cashier slid the money toward the gunman and some of it fell on the floor. The gunman

---

4. The events at the Willoughby Dollar General were the basis for Counts 9 to 12 of the Indictment.

5

Case No. 2021-L-135

pushed Simmons head downward and made him pick up the money. The gunman then fled the store.

{¶16} Cory Svagerko, a deputy sheriff with the Lake County Sheriff's Department, testified that he was assigned to investigate the Sines Marathon robbery. He confirmed that the amount taken was about 200 to 280 dollars. He obtained surveillance video from the Marathon and from Frankie's Tavern located across the road from the Marathon. A screen shot taken of the suspect in the Marathon was posted to the Sheriff's Department Facebook account. In response, he received from the Geauga County Sheriff's Office a clip of the suspect from the Parkman BP surveillance video. Svagerko noted the following similarities between the suspect in the Marathon and the BP videos: "gray sweatshirt, gray sweatpants[5], and the black handled firearm with the silver slide, and a mask covering the face, and a pair of gloves where the palm was [a] darker color and the back was a lighter color," and the suspect "appeared to be five foot eleven inches, just shy of six foot, with a muscular build." Over the next several days, Johnson was identified as a suspect in the robberies and his home address and cell phone number were obtained by law enforcement.

{¶17} On January 29, 2020, Johnson was arrested at his residence on Miller Avenue. The police recovered Shanklin's Kia Sportage. The vehicle had a stolen temporary registration tag. Inside the vehicle, the following items were recovered: a pair of gloves "black on the palm side and a lighter color of gray or blue on the back of the hand side," and "a black colored ski mask with a depiction of a character from a movie * * * Jack Skellington." In a spare bedroom of the residence, the police recovered a pair of

---

5. The gray sweatsuits were similar, but not identical.

6

Case No. 2021-L-135

Nike tennis shoes with tread matching the impressions taken from the Sines Marathon. The color of the shoes matched that of the shoes in the video. In the same room, gray Nike sweatpants similar to those worn by the suspect in the Marathon surveillance video were found. The police also recovered a loaded Taurus forty caliber pistol, black with a silver slide. In the master bedroom, a gray Nike hooded sweatshirt was found that matched the sweatpants found in the spare bedroom and the suspect's clothing in the surveillance video.

{¶18} Andrew Humar, a detective with the Geauga County Sheriff's Office, investigated the Dollar General robbery in Chardon. Molds were taken of footprints left in the snow in the area where a witness had seen the suspect's vehicle parked. Humar noted the similarity in the description of the vehicle used in the Chardon Dollar General, Parkman BP, and Sines Marathon robberies. It was eventually determined that the vehicle in question was a Kia Sportage. Humar also learned that Cleveland Police were investigating a robbery involving an orange or copper colored Kia Sportage. Surveillance video from the BP station at Carnegie and East 9th Street in Cleveland depicted Johnson operating the Kia on January 23, 2020. Through license plate recognition software, the Kia was identified as being in Euclid on two occasions during daylight hours. Humar also personally observed Johnson driving the Kia on January 29 prior to his arrest. Among articles of clothing seized at Johnson's residence, Humar noted a hooded Tommy Hilfiger jacket and pair of red, black, and white shoes similar to items worn by the perpetrator during the Willoughby Dollar General robbery.

{¶19} Steven Deardowski, a detective with the Geauga County Sheriff's Office, ran the T-Mobile records through software (Cell Hawk) creating a visual display of the

7

various cell phone towers that connected Johnson's phone over time and on different dates. The mapped or visualized data placed the Johnson's cell phone in the vicinity of the Sines Marathon and the Willoughby Dollar General on the dates of the robberies. However, there was no data connecting the phone with a tower in proximity to Willoughby at the time of the Motel 6 incident. Deardowski also obtained Google records for the Gmail account associated with the phone.

{¶20} William Hasty, an agent with the FBI's violent crime task force in Cleveland between Thanksgiving 2019 and January 2020, extracted location data from the Google records obtained by Deardowski and produced maps of the location of the cell phone relative to the different crimes at the times of the robberies. Again, there was not data relative to Motel 6 on December 19, 2019.

{¶21} Nathan Carey, an employee of the Lake County Crime Lab in the trace evidence section, assisted in making "dental stone casts" of two of the footwear impressions identified outside the Sines Marathon. Carey subsequently compared photographic images of the footwear impressions with Nike shoes submitted to the Crime Lab by the Lake County Sheriff's Office. Carey concluded that the Nike shoes could not be excluded as the source of the impressions, but it could not be stated with certainty these particular Nikes caused the impressions.

{¶22} Rebecca Silverstein, a forensic analyst with the Lake County Crime Lab, testified that the black Taurus semi-automatic pistol with the silver slide recovered from the Kia Sportage was operable and functioned as designed.

{¶23} Michael Zgrebnak, part of the detective bureau of the Lake County Sheriff's Office between Thanksgiving 2019 and January 2020, was the lead investigator in the

8

Lake County robberies. He believed there were strong similarities between these robberies and the ones from Geauga County and, subsequently, from Euclid: the stature of the suspect in the surveillance videos was similar; the face mask and gloves were identical; the weapon was a black pistol with a silver slide; the gun was brandished in the suspect's right hand and the money grabbed with the left hand and put in the left pants pocket; the suspect parked and approached from the side of the building; and the suspect ordered the persons present to get down on the ground before fleeing.

{¶24} Zgrebnak was present when Johnson was arrested. A lady named Kuman, who lived at the Miller Avenue address, confirmed Johnson's telephone number. A few months later, Zgrebnak collected hair samples from Johnson. At this time, Johnson told him that "you already have enough, and that this was overkill."

{¶25} David Green, the trace evidence supervisor at the Lake County Crime Lab, analyzed hair fragments recovered from the knit hat (mask) and gloves. Johnson could not be excluded as the source of the hair from the gloves and the hat, although he could not be identified as the source of the hair with certainty. Additionally, there was a single hair recovered from the hat that was Caucasian.

{¶26} Karen Zavarella, the DNA supervisor at the Lake County Crime Lab, analyzed the pistol, the gloves, and the hat (mask) for DNA testing. The results from the pistol and the gloves were inconclusive (the DNA profile was an incomplete complex mixture representing a minimum of four contributors which precluded interpretations or comparisons). With respect to the hat, Zavarella testified that it is 91.8 nonillion times more likely that Johnson was the source of the DNA profile than that the profile derived from an unidentified source.

9

{¶27} Johnson testified on his own behalf. He denied any involvement in the robberies described by the prosecution's witnesses. He testified that he purchased the Kia Sportage from a man from Mentor named Mike. He had paid Mike $11,000 for the vehicle through a cash app account that was funded by an unnamed associate. Johnson gave his associate cash in $2,500 increments which he transferred to Mike through the app. Johnson was worried about Mike's character, so he engaged in Google searches as to whether the Kia Sportage had tracking and how to transfer a vehicle without title. Johnson did not suspect that the Kia was stolen. Johnson admitted that he used the phone number ending in 7088 but denied that the LG Tracfone was his.

{¶28} Lanetrice Jones, the mother of Ralph Jones[6], testified that, after the incident involving her son, she reported to the police the existence of a white man residing at the Motel 6 who had a skeleton hat or "skully," but that it could not be pulled down or cover the face.

{¶29} On November 19, 2021, the jury returned its verdict finding Johnson "Not Guilty" of Counts 1 through 3 and "Guilty" of Counts 4 through 13 along with the attendant firearm specifications.

{¶30} On November 30 and December 6, 2021, the sentencing hearing was held. The trial court sentenced Johnson to the following terms of imprisonment: Aggravated Robbery (Count 4): between 11 and 16.5 years; Kidnapping (Count 5): 3 years; Kidnapping (Count 6): 7 years; Having Weapons While Under Disability (Count 7): 36 months; Petty Theft (Count 8): 180 days; Aggravated Robbery (Count 9): 11 years; Kidnapping (Count 10): 4 years; Having Weapons While Under Disability (Count 11): 36

---

6. Ralph Jones' testimony provided the basis for Counts 1 to 3 of the Indictment.

Case No. 2021-L-135

months; Petty Theft (Count 12): 180 days; and Receiving Stolen Property (Count 13): 12 months. Counts 4, 7, 9, and 13 were ordered to be served consecutively to the other Counts and Counts 5, 6, 8, 10, 11, and 12 were ordered to be served concurrently with the other Counts. Considering the basic prison terms, Johnson's aggregate sentence was between 26 and 31.5 years.

{¶31} The trial court additionally found Johnson guilty of the repeat violent offender specifications to Counts 4, 5, 6, 9, and 10 and imposed prison terms of 6 years for each specification. The court found that the firearm specifications to Counts 4, 5, 6, 9, and 10 carried mandatory 54-month prison terms. The court ordered the repeat violent offender and firearms specifications for Counts 4 and 9 to be served consecutively to the other prison terms and the repeat violent offender and firearm specifications for Counts 5, 6, and 10 to be served concurrently with the other prison terms. The additional terms imposed for the repeat violent offender and firearm specifications extended the length of Johnson's aggregate prison sentence by 21 years. Accordingly, Johnson's aggregate prison sentence was between 47 and 52.5 years.

{¶32} On December 30, 2021, Johnson filed a Notice of Appeal. On appeal, he raises the following assignments of error:

> [1.] The State did not prove the case "beyond a reasonable doubt."
>
> [2.] The Trial Court erred in hearing and deciding matters that occurred in different venues.
>
> [3.] The sentence was disproportionate to the offenses.

{¶33} In the first assignment of error, Johnson argues the State failed to prove its case beyond a reasonable doubt. Johnson does not dispute that the various crimes

11

described by the prosecution's witnesses occurred but, rather, that Johnson was the perpetrator: "He [the perpetrator] was meticulous in concealing himself, as he was completely covered from head to toe * * * and in essence he was completely unrecognizable. His scheme of hiding his identity resulted in witnesses being unable to identify this person. * * * They found many articles in the house, they found clothes and shoes which were alleged to have belonged to the appellant. However, since the completely covered perpetrator was never properly identified, there was absolutely no identification of the perpetrator. The clothes and shoes could have belonged to someone who happened to also live there, or someone who planted it there. There were no identifying factors. How could a rational jury return a verdict absent proof beyond a reasonable doubt?" Brief of Appellant at 6.

{¶34} "Every criminal prosecution requires proof that the person accused of the crime is the person who committed the crime." *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 15. "This truism is reflected in the state's constitutional burden to prove the guilt of 'the accused' beyond a reasonable doubt." *Id.*; *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991) ("there is but one standard of proof in a criminal case, and this is proof of guilt beyond a reasonable doubt").

> "Reasonable doubt" is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. "Proof beyond a reasonable doubt" is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs.

12

R.C. 2901.05(E); *State v. Van Gundy*, 64 Ohio St.3d 230, 233, 594 N.E.2d 604 (1992) (recognizing that the definitions for "reasonable doubt" and "proof beyond reasonable doubt" express the legislature's "clear intention that the standard for proving guilt beyond a reasonable doubt be explained in both qualitative and quantitative terms"); *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 123-125.

{¶35} It is well-established that "the state can prove the identity of the accused by 'circumstantial or direct' evidence." *Tate* at ¶ 15; *State v. Palmer*, 5th Dist. Tuscarawas No. 2021 AP 08 0019, 2022-Ohio-1968, ¶ 45 ("[d]irect or circumstantial evidence is sufficient to establish the identity of the accused as the person who committed the crime"); *State v. Miller*, 11th Dist. Lake No. 2011-L-111, 2012-Ohio-3515, ¶ 54 ("[c]ircumstantial evidence may be sufficient to establish the identity of the accused").

{¶36} The function of the appellate court is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *Jenks* at 273. Stated otherwise, "[t]he verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." *Id.*

{¶37} In the present case, the State presented abundant circumstantial evidence to establish, beyond a reasonable doubt, that Johnson was the person who committed the Sines Marathon and Willoughby Dollar General robberies. In both cases, witnesses described the robber's vehicle as being some variation on the color orange, matching the Kia Sportage Johnson was operating at the time of the robberies. Location data extracted from Johnson's cell phone and related Google account placed Johnson in the vicinity of Sines Marathon and Willoughby Dollar General at the time of the robberies. In both

13

robberies, the perpetrator wore a black and white skeleton mask and gloves. A similar mask and gloves were found in the Sportage at Johnson's residence. Johnson's hair and DNA were found on the mask and his hair was found in the gloves. In both robberies a black pistol with a silver slide was used. A gun matching this description was found at Johnson's residence. In the Sines Marathon robbery, the perpetrator wore a gray sweatsuit with tennis shoes. A matching gray Nike sweatsuit and Nike tennis shoes were recovered from Johnson's residence. The tread of the tennis shoes matched the footwear impressions left at the scene of the crime. In the Willoughby Dollar General robbery, the perpetrator wore a hooded Tommy Hilfiger jacket with black, red, and white tennis shoes. A similar jacket and shoes were found at Johnson's residence.

{¶38} Johnson argues the clothing could have belonged to someone else or been planted at the scene. Both conjectures are possible in the realm of imaginary doubt, but neither is reasonable given the circumstances of the present case. Johnson notes that one of the witnesses described the perpetrator's vehicle as "tan," and it is worth emphasizing that Johnson was acquitted of the charges relating to this witness.

{¶39} The first assignment of error is without merit.

{¶40} In the second assignment of error, Johnson argues that "Lake County lacked capacity to indict him and sentence him on grounds of venue." Brief of Appellant at 7. Trial of the charges in Lake County prejudices Johnson "since he is losing witness privileges and other privileges coming out of the venues wh[e]re the alleged crime occurred." Thus, "Lake County was the wrong county to adjudicate the cases relative to the foreign 'pending' venues, them being Cuyahoga and Geauga." Brief of Appellant at 11.

14

Case No. 2021-L-135

**{¶41}** The law regarding venue in criminal proceedings is succinctly laid out by the Ohio Supreme Court:

> Article I, Section 10 of the Ohio Constitution affords the accused the right to "a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." That provision accordingly "fixes venue, or the proper place to try a criminal matter." *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983). Additionally, R.C. 2901.12 contains "the statutory foundation for venue," *State v. Draggo*, 65 Ohio St.2d 88, 90, 418 N.E.2d 1343 (1981), and provides that "[t]he trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and * * * in the territory of which the offense or any element of the offense was committed," R.C. 2901.12(A).

> "Under Article I, Section 10 and R.C. 2901.12, evidence of proper venue must be presented in order to sustain a conviction for an offense." *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 20. Although venue is not a material element of any criminal offense, *Draggo* at 90, it is a fact that must be proved at trial beyond a reasonable doubt, unless it has been waived by the defendant, *Headley* at 477, citing *State v. Dickerson*, 77 Ohio St. 34, 82 N.E. 969 (1907), paragraph one of the syllabus. Therefore, a "conviction may not be had" if the state fails to prove beyond a reasonable doubt that the defendant committed the alleged offense or an element of the offense in the charging county. *State v. Nevius*, 147 Ohio St. 263, 71 N.E.2d 258 (1947), paragraph three of the syllabus; *see also Hampton* at ¶ 19. The state need not prove venue "in express terms," provided that "all the facts and circumstances in the case" establish it. *Headley* at 477, citing Dickerson at paragraph one of the syllabus.

*State v. Foreman*, 166 Ohio St.3d 204, 2021-Ohio-3409, 184 N.E.3d 70, ¶ 12-13.

**{¶42}** In the present case, the State established beyond a reasonable doubt that the crimes for which Johnson was charged and convicted – the robbery of Sines Marathon and the Willoughby Dollar General – took place in Lake County. Johnson was not charged for any alleged crimes occurring in Cuyahoga or Geauga Counties. The only arguable exception is Receiving Stolen Property, inasmuch as the Kia Sportage was

15

recovered from Johnson's home in Cuyahoga County. The venue statute, however, addresses this situation: "When the offense involved the unlawful taking or receiving of property * * *, the offender may be tried in any jurisdiction from which or into which the property * * * was taken * * *." R.C. 2901.12(C).

{¶43} The second assignment of error is without merit.

{¶44} In the third assignment of error, Johnson argues that, "[i]n [the] consideration of the seriousness and recidivism factors in this matter, the Trial Court erred in the within sentence." Brief of Appellant at 18. He maintains the circumstances in the present case compel the imposition of minimum sentences. The facts of record "do not portray a hard core criminal," rather, "the victims suffered the least since the perpetrator acted gently and he never intended to hurt them." Brief of Appellant at 19. Consistent with the principles and purposes of sentencing, a lenient sentence "will promote an incentive to the offender to mend his way, while a stiff sentence will only make him bitter without the incentive of mending his fences." Brief of Appellant at 16.

{¶45} "A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing." R.C. 2929.11(A). "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." *Id.* "A sentence imposed for a felony shall be reasonably calculated to achieve the three overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and

16

its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶46} When imposing a sentence for a felony, the trial court "has discretion to determine the most effective way to comply with the purposes and principles of [felony] sentencing" and "shall consider the factors * * * relating to the seriousness of the conduct" and "the factors * * * relating to the likelihood of the offender's recidivism." R.C. 2929.12(A). A non-exhaustive list of factors relating to the seriousness of the conduct and the likelihood of recidivism is set forth in divisions (B), (C), (D), and (E) of R.C. 2929.12.

{¶47} The Ohio Supreme Court has described these two statutory sections "as a general judicial guide for every sentencing" in which "there is no mandate for judicial fact-finding." *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 36 and 42; *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 20 ("neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record"). The appellate review of felony sentences established by R.C. 2953.08(G)(2)(b) "therefore does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Jones* at ¶ 39; *State v. Stanley*, 11th Dist. Lake No. 2020-L-065, 2021-Ohio-108, ¶ 35 ("a sentencing court's compliance with R.C. 2929.11 and 2929.12 does not provide grounds for a reviewing court to vacate or otherwise modify a sentence pursuant to R.C. 2953.08(G)(2)").

17

Case No. 2021-L-135

{¶48} Accordingly, Johnson's claim that the harshness of his sentence is unjustified for one "who made the mistake of stealing," but "never hurt a soul" and "gently treated" the victims does not establish proper grounds for reversing his sentence.

{¶49} The third assignment of error is without merit.

{¶50} For the foregoing reasons, Johnson's convictions and sentence are affirmed. Costs to be taxed against the appellant.

JOHN J. EKLUND, J., concurs,

THOMAS R. WRIGHT, P.J., concurs in judgment only.

Case No. 2021-L-135